Affirm and Opinion filed December 5, 2012.



In The

# Court of Appeals
## Fifth District of Texas at Dallas

No. 05-11-00406-CR

GEOVANNI DELPINO, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 296th Judicial District Court
Collin County, Texas
Trial Court Cause No. 429-80818-10

## MEMORANDUM OPINION

Before Justices O'Neill, FitzGerald, and Lang-Miers
Opinion by Justice Lang-Miers

Appellant Geovanni Delpino waived a jury and pleaded not guilty to theft of property in the amount of $1,500 or more but less than $20,000. The trial court found appellant guilty and assessed punishment at two years' confinement in the state jail plus a $500 fine. The court suspended the imposition of confinement and placed appellant on community supervision for four years. In three issues on appeal, appellant argues that the police lacked probable cause to seize property from his vehicle, the evidence is insufficient to support the conviction, and the trial court erred by allowing defense counsel to represent both appellant and his codefendant, Elvis Pedraza, and by failing to admonish appellant about the consequences of joint

1

representation. We affirm the trial court's judgment. Because all dispositive issues are settled in law, we issue this memorandum opinion. *See* TEX. R. APP. P. 47.4.

## BACKGROUND

Keith MacMillan testified that on June 27, 2009, he was a truck driver for Celadon Trucking. On that day he parked his trailer at a truck stop in Royse City, unhooked the tractor from the trailer, secured the trailer with a professional heavy-duty King Pin lock, and left the trailer parked for the evening. When he returned the next morning, the trailer was gone. He found the lock in some nearby brush with a screwdriver sticking in it. He said someone apparently took the screwdriver, stuck it in the key lock, and slammed it with something heavy to break the lock. MacMillan identified the bill of lading from the trailer; it listed the contents as 2,160 Acer computer monitors.

Officer Cary Philley of the Plano Police Department testified that he was on patrol on July 3, 2009, when he saw two individuals removing boxes from an 18-wheeler tractor (no trailer) parked at the back of a Kroger store and handing the boxes to a third individual who loaded the boxes into a Suburban. Officer Philley said the boxes resembled laptop computer boxes. He watched the individuals for a few minutes and then drove closer to them. When they saw him, they immediately stopped what they were doing and closed the back of the Suburban and the doors to the tractor.

Officer Philley said the entire sleeper area of the tractor was full of boxes and "it was almost a chain" the way the individuals were passing the boxes from one to another. Appellant was one of the individuals unloading the boxes from the tractor and Pedraza was the individual by the Suburban. Officer Philley said the situation seemed suspicious to him because he had received several emails about cargo thefts in the area, and these individuals were in an isolated

2

area and passing boxes that were identical to each other from one vehicle to another. He approached the individuals and began to talk to them about what they were doing. He determined that he needed a Spanish-speaking officer and called for assistance; Officer Rick Mills arrived soon thereafter. The officers spoke to the individuals and at some point asked for consent to search the vehicles. Appellant and Pedraza signed voluntary consent to search forms. The officers found 17 monitors in the Suburban and 80 monitors in the tractor. Detectives Steven Boyd and Xavier Badillo also responded to Officer Philley's call for assistance.

Appellant told the officers that he was going to visit Pedraza and parked his tractor at the Kroger store because he could not park it on a residential street. Appellant also said he did not want to leave the monitors in the tractor, so they were loading them into the Suburban and would take the Suburban to Pedraza's house. The record showed that the Suburban would not hold all 97 monitors. Appellant also told the officers that he found the boxes sitting outside near a field in south Dallas where he plays baseball. He said he saw them there two days in a row and considered them abandoned so he took them. Detective Boyd said the explanation sounded suspicious because the boxes were in "pristine" condition and did not appear to have been outside at all, and if appellant and Pedraza were concerned about protecting the property they would not have parked the tractor in a secluded area.

The police did not arrest appellant and Pedraza at the scene, but they seized the 97 monitors. The serial numbers on the 97 monitors matched the serial numbers of 97 monitors stolen from the Celadon trailer in Royse City.

## DISCUSSION

In his first issue, appellant contends that the police lacked probable cause to seize the property because it was not immediately apparent that the monitors were contraband. He

3

contends that the search and seizure were unreasonable and unconstitutional. The State contends that appellant did not preserve this issue for our review. We agree with the State. Appellant did not complain about the search or seizure below by filing a motion to suppress the evidence or by objecting when the evidence was offered at trial. Additionally, appellant signed a voluntary consent to search form authorizing the officers to search the tractor. Because appellant did not object to the evidence when it was offered or complain about an unlawful search and seizure in the trial court, he may not complain now on appeal. *Little v. State*, 758 S.W.2d 551, 563 (Tex. Crim. App. 1988). We resolve issue one against appellant.

In his second issue, appellant argues that the evidence is insufficient to support the conviction. He specifically contends that the evidence is insufficient to show he "had recent unexplained possession of stolen property" because five days between the trailer theft and his possession of the monitors is not "recent." He also argues that he gave a reasonable explanation for his possession of the monitors. The State argues that the five-day lapse is "recent" because "[w]hile it might be easy to sell a single computer monitor in five days, such is not the case with a group of 97 identical monitors in their original unopened shipping boxes from the same stolen trailer." The State further contends that appellant's explanation for his possession of the monitors was "patently false."

In reviewing a challenge to the sufficiency of the evidence, we view all the evidence in the light most favorable to the verdict and determine whether a reasonable fact-finder could have found each element of the offense beyond a reasonable doubt. *See Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012). Evidence is sufficient if "the inferences necessary to establish guilt are reasonable based upon the cumulative force of all the evidence when considered in the

light most favorable to the verdict." *Id.* In addition, we are mindful that the fact-finder "exclusively determines the weight and credibility of evidence." *Id.*

A person commits theft when he unlawfully appropriates property with the intent to deprive the owner of that property. TEX. PENAL CODE ANN. § 31.03(a) (West Supp. 2012). Theft may be established by proof of unexplained possession of recently stolen property. *Chavez v. State*, 843 S.W.2d 586, 588 (Tex. Crim. App. 1992). To warrant such an inference of guilt from the circumstances of possession alone, the possession must be personal, recent, unexplained, and involve a distinct and conscious assertion of right to the property by the defendant. *Buchanan v. State*, 780 S.W.2d 467, 469 (Tex. App.—Dallas 1989, pet. ref'd). If the defendant offers an explanation for his possession of the property, the record must show that the explanation is either false or unreasonable. *Jackson v. State*, 12 S.W.3d 836, 839–40 (Tex. App.—Waco 2000, pet. ref'd); *Buchanan*, 780 S.W.2d at 470. Whether property is "recently" stolen or possessed and whether the explanation for possession of the property is reasonable are questions of fact. *Jackson*, 12 S.W.3d at 839; *Buchanan*, 780 S.W.2d at 470.

Here there was evidence that a trailer containing over 2,000 Acer computer monitors worth $136 each was stolen and that appellant possessed 97 of those monitors within five days of the date they were stolen. His explanation to the police was that he saw the boxes two days in a row sitting outside near a baseball field, decided they had been abandoned, returned with a tractor, took the boxes that were in the best condition, and left the rest of the boxes where he found them. At trial, he denied telling the officers that he saw the boxes at the field two days in a row and testified that he took the boxes the first day he saw them. The record showed that the boxes and monitors were in "pristine" condition and appeared never to have been outside. At $136 each, the 97 monitors were worth over $13,000. Appellant's explanation to the police

5

about why he was transferring the boxes from the tractor to the Suburban was that he was going to visit Pedraza and did not want to leave the monitors in the tractor. But the evidence showed that the 97 monitors would not fit in the Suburban. Additionally, at trial appellant's explanation changed: he testified that he was giving Pedraza some of the monitors to send to relatives in Cuba because the ban on shipping electronics had been lifted.

The trial court implicitly found that appellant's possession of the monitors five days after they were stolen was recent, and the record supports that finding. *See Hardage v. State*, 552 S.W.2d 837, 840 (Tex. Crim. App. 1977) (possession of six of eight items taken in burglary seven months earlier under circumstances is sufficiently "recent"); *Pedraza v. State*, No. 05-11-00396-CR, 2012 WL 2308256, at *7 (Tex. App.—Dallas June 19, 2012, no pet.) (mem. op., not designated for publication) (finding Pedraza's possession of monitors five days after theft of trailer "recent"). The trial court also found appellant's explanation unreasonable,[1] and the record supports that finding. *See Pedraza*, 2012 WL 2308256, at *8. Having reviewed all the evidence, we conclude that it is sufficient to support the conviction. We resolve issue two against appellant.

In issue three, appellant argues that the trial court erred by allowing defense counsel to represent both appellant and Pedraza and by failing to admonish appellant about the consequences of joint representation. The State argues that appellant did not object to the joint representation at trial and has not shown that an actual conflict arose that adversely affected his counsel's performance.

When one attorney represents multiple defendants in the same case, a conflict of interest arises if "'one defendant stands to gain significantly by counsel adducing probative evidence or

---

[1] The trial court told appellant "there is certainly no way in the world that you believed that those monitors were abandoned. They were stolen property, and you took them. They certainly weren't yours . . . ."

6

advancing plausible arguments that are damaging to the cause of a co-defendant whom counsel is also representing.'" *Amaya v. State*, 677 S.W.2d 159, 162 (Tex. App.—Houston [1st Dist.] 1984, pet. ref'd) (quoting *Ferguson v. State*, 639 S.W.2d 307, 310 (Tex. Crim. App. 1982)). However, a defendant may waive his right to conflict-free counsel. *Ex parte Prejean*, 625 S.W.2d 731, 733 (Tex. Crim. App. 1981). To support a knowing and intelligent waiver, the record should demonstrate that the defendant was aware of the conflict of interest, realized the consequences of continuing with joint representation, and was aware of his right to obtain other counsel. *Id.*

Before trial began, the State asked the court to warn appellant "about any potential conflict going forward being represented by one attorney." The trial court addressed appellant and Pedraza, asked if they understood that the same lawyer was representing them both, asked if they understood that joint representation "could create some sort of conflict for [your lawyer], meaning that in order to defend one of you, it may be at the cost of the other[,]" and asked if they waived the conflict of interest. Appellant and Pedraza said they understood, waived any potential conflict of interest, and did not object to the joint representation.

Appellant argues that the court's admonitions were insufficient because the record shows that he was not aware of his right to separate counsel or of the specific risks involved with joint representation. But there is no requirement that the trial court conduct an inquiry into joint representation unless the court has knowledge of special circumstances creating a conflict. *See Jones v. State*, 728 S.W.2d 469, 473 (Tex. App.—Houston [1st Dist.] 1987, no pet.). And appellant has not pointed to anything in the record showing that any such special circumstances existed or that the court had knowledge of them. *See Pedraza*, 2012 WL 2308256, at *8–11.

Even if appellant was not aware of his right to his own counsel, he concedes that because he did not object to the joint representation he must show that an actual conflict adversely

7

affected his counsel's performance before he is entitled to relief on appeal. *See Ex parte McCormick*, 645 S.W.2d 801, 805–06 (Tex. Crim. App. 1983) (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980)). To carry this burden, "[a]n appellant must identify specific instances in the record that reflect a choice that counsel made between possible alternative courses of action, such as eliciting or failing to elicit evidence helpful to one interest but harmful to the other." *Pedraza*, 2012 WL 2308256, at *9 (citing *Perez v. State*, 352 S.W.3d 751, 755 (Tex. App.—San Antonio 2011, no pet.)).

Appellant generally cites Pedraza's testimony and argues that he was prejudiced by it, but he does not point to any specific testimony showing that an actual conflict of interest existed. We have reviewed Pedraza's testimony and find no support for appellant's argument. *See id.* at *10 (finding no actual conflict on appeal of codefendant's conviction).

Appellant also cites counsel's closing argument that Pedraza was "less culpable" than appellant. He argues that this is a "clear conflict" and because the court's admonitions "did not make [him] aware of potential conflicts or his right to hire separate counsel, the waiver was not knowingly and intelligently made." We disagree. Counsel specifically argued, "And then Mr. Pedraza – but even by Mr. Delpino's own testimony and admission, Mr. Pedraza wasn't even present and had no reason to know where the property came from. So there is even less evidence of – in Mr. Pedraza's case." Counsel's argument does not show that an actual conflict existed between appellant and Pedraza; the argument merely summarized the testimony. *See id.* at *10. We conclude that appellant has not shown that the trial court erred by "allowing trial counsel to represent both appellant and his codefendant and failing to properly admonish appellant as to the consequences of such representation." *See id.* at *11 (finding no special circumstances requiring

8

trial court to conduct hearing or make inquiry about waiver of right to conflict-free counsel). We resolve issue three against appellant.

**CONCLUSION**

We affirm the trial court's judgment.

ELIZABETH LANG-MIERS
JUSTICE

Do Not Publish
TEX. R. APP. P. 47
110406F.U05

9

# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

No. 05-11-00406-CR

GEOVANNI DELPINO, Appellant

V.

THE STATE OF TEXAS, Appellee

Appeal from the 296th Judicial District
Court of Collin County, Texas (Trial Court
No. 429-80818-10).
Opinion delivered by Justice Lang-Miers,
Justices O'Neill and FitzGerald
participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED.**

Judgment entered December 5, 2012.

ELIZABETH LANG-MIERS
JUSTICE